**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: BEACH FIRST NATIONAL
BANCSHARES, INCORPORATED,

*Debtor.*

---

MICHELLE LEIGH VIEIRA, as Trustee
for the Estate of Beach First
National Bancshares, Incorporated,
*Plaintiff-Appellant,*

v.

MICHAEL BERT ANDERSON; ORVIS
BARTLETT BUIE; RAYMOND E.
CLEARY, III; THOMAS FULMER;
MICHAEL D. HARRINGTON; JOE N.
JARRETT, JR.; RICHARD E. LESTER;
LEIGH AMMONS MEESE; RICK H.
SEAGROVES; DON J. SMITH; SAMUEL
ROBERT SPANN, JR.; B. LARKIN
SPIVEY, JR.; WALTER E. STANDISH,
III, as President and Chief
Executive Officer of Beach First
National Bancshares, Incorporated;
JAMES C. YAHNIS, as Directors of
Beach First National Bancshares,
Incorporated,
*Defendants-Appellees.*

No. 11-2019

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(2:11-cv-00055-DCN; 10-03499-DD; 10-80143-AP)

Argued: September 18, 2012

Decided: December 28, 2012

Before AGEE, WYNN, and FLOYD, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published
opinion. Judge Agee wrote the opinion, in which Judge Wynn
and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** David Jay Parrish, NEXSEN PRUET, Charleston,
South Carolina, for Appellant. Dennis James Connolly,
ALSTON & BIRD, LLP, Atlanta, Georgia, for Appellees. **ON
BRIEF:** Richard L. Tapp, NEXSEN PRUET, Charleston,
South Carolina, for Appellant. F. Truett Nettles, II, GRIM-
BALL & CABANISS, LLC, Charleston, South Carolina;
Robert R. Long, ALSTON & BIRD, LLP, Atlanta, Georgia,
for Appellees.

---

## OPINION

AGEE, Circuit Judge:

I

Michelle Leigh Vieira, trustee in bankruptcy of Beach First
National Bancshares, Inc., (the "Trustee" and "Bancshares,"

respectively) filed this action against the former directors and officers of Bancshares (collectively, including both fiduciary capacities, the "Directors"). The Directors also all formerly served as the officers and directors of First National Bank Myrtle Beach, SC (the "Bank"), a wholly owned subsidiary of Bancshares. The Bank was Bankshares' primary asset.

In 2008, the United States Office of the Comptroller of the Currency ("OCC") began monitoring the Bank.[1] Finding serious deficiencies with the management and operation of the Bank, OCC required the Bank to take a number of corrective actions. These corrective actions failed to sustain the financial stability of the Bank. Consequently, on April 9, 2010, OCC closed the Bank and named the Federal Deposit Insurance Corporation ("FDIC") as its receiver. The FDIC subsequently liquidated all of the Bank's assets so that the Bank ceased as a going concern or functional entity.

As a consequence of the Bank's failure, Bancshares filed for bankruptcy under Chapter 7 on May 14, 2010, in the United States Bankruptcy Court for the District of South Carolina. The Trustee then filed this adversary proceeding, asserting breach of fiduciary duty and negligence against the Directors in their capacity as the officers and directors of Bancshares. Specifically, the Trustee alleged that the Directors breached a number of duties to Bancshares, resulting in mismanagement and lack of oversight of the Bank and over Bancshares' interest in a real estate holding entity.

The Directors moved the bankruptcy court to (1) stay the adversary proceeding, (2) withdraw the reference to the bank-

---

[1]OCC is an independent bureau of the U.S. Department of the Treasury that charters, regulates, and supervises all national banks and federal savings associations. Among other things, OCC may take enforcement actions against national banks and federal savings associations that fail to comply with laws and regulations or otherwise engage in unsound practices.

ruptcy court and transfer the action to the United States District Court for the District of South Carolina, or (3) dismiss the case for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The bankruptcy court stayed the proceedings, and the district court granted the motion to withdraw the reference.[2]

After briefing and argument, the district court granted the Directors' motion to dismiss, concluding that the Trustee lacked standing to bring the action. *See Vieira v. Anderson* (*In re Beach First Nat'l Bancshares, Inc.*), No. 2:11-CV-0055-DCN, 2011 WL 3794234, at *6 (D.S.C. Aug. 25, 2011). In analyzing the Trustee's pleading, the district court determined that the Trustee pled against the Directors only claims derived from alleged defalcations in the Directors' operation of the Bank. The district court then held that the Trustee's right to bring such derivative claims had been divested by statute in favor of the FDIC. Derivative claims of the nature asserted by the Trustee, the district court determined, could be brought only by the FDIC under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). To date, the FDIC has not brought an action against the Directors and has stated in communications to the Trustee that it would likely not proceed against them.

From the judgment dismissing her Complaint, the Trustee now timely appeals. We have jurisdiction under 28 U.S.C. § 1291.

---

[2]Pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure, "[a] motion for withdrawal of a case or proceeding shall be heard by a district judge." Motions for withdrawal "shall be by motion filed with [the bankruptcy court]," which, through the clerk of the bankruptcy court, "shall promptly transmit to the United States District Court the motion" for its review. Bankr. D.S.C. R. 5011-1.

In view of the withdrawal of the reference, for purposes of this opinion, we will refer to the Trustee's adversary proceeding pleading as a "complaint."

## II

In a nutshell, the Trustee contends on appeal that the district court erred in granting the Directors' motion to dismiss for two reasons. First, the Trustee argues that she did not plead derivative claims against the Directors, but instead asserted direct claims that do not fall within the purview of the FDIC. Alternatively, the Trustee contends that the claims against the Directors, even if derivative in nature, remain hers to bring because the FDIC has declined to act and has acquiesced in the Trustee's assertion of those claims.

We review a district court's dismissal of an action under Rule 12(b)(6) *de novo*. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a Rule 12(b)(6) dismissal, we accept all factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). We review questions of law *de novo*. *See Logan v. JKV Real Estate Servs.* (*In re Bogdan*), 414 F.3d 507, 510 (4th Cir. 2005). To the extent that we consider questions of state law to reach our decision, South Carolina law applies.[3]

Applying those standards, we disagree, for the most part, with the Trustee's arguments for the reasons set forth below. Accordingly, we affirm the judgment of the district court, with the exception of its dismissal of the Trustee's claim regarding Bancshares' interest in a real estate holding entity.

## III

### A

A trustee in bankruptcy succeeds to all rights of the debtor, including the right to assert any causes of action belonging to

---

[3]Bancshares was organized under the laws of South Carolina. We agree with the parties and the district court that South Carolina law is the controlling law for state law purposes.

the debtor. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999). A debtor's right to bring a legal claim is part of the bankruptcy estate under 11 U.S.C. § 541(a). Applying that foundational principle to the case at bar, the Trustee has the authority to assert any cause of action that Bancshares could have brought in its own right. Absent statutory modification, this power includes the right to assert derivative claims of Bancshares (as the Bank's sole shareholder) against the Directors in their capacity as officers and directors of the Bank. This is so because, under South Carolina law, when an officer or director of a corporation causes injury to the corporation or fails to fulfill a duty to the corporation, that corporation may bring a direct action against the officer or director. *See Babb v. Rothrock*, 401 S.E.2d 418, 419–20 (S.C. 1991). When the corporation fails to bring a direct action, a shareholder may bring suit on behalf of the corporation in a derivative action. *See Rice-Marko v. Wachovia Corp.*, 728 S.E.2d 61, 65 (S.C. 2012). In this case, that shareholder is Bancshares, now acting by virtue of the bankruptcy proceeding through the Trustee.

Under FIRREA, however, the FDIC, when appointed receiver of a bank, succeeds to "all rights, titles, powers, and privileges of the insured depository institution, *and of any stockholder . . . of such institution* with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added). The Trustee does not dispute that derivative claims fall within the powers and privileges of a stockholder of a financial institution "with respect to the institution" as contemplated by § 1821(d)(2)(A)(i).

The district court concluded that the Trustee brought only derivative claims against the Directors because "the directors and officers of Bancshares and the Bank were one and the same, and the harm caused to Bancshares, the holding company, was the direct result of the failure of its wholly-owned subsidiary and primary asset, the Bank." *Vieira*, 2011 WL 3794234, at *6. In reviewing the basis of the Directors' liabil-

ity to Bancshares as pled by the Trustee, the district court observed that the only harm pled "result[ed] from the mismanagement and failure of its primary asset, the Bank." *Id.* at *3. In support of its conclusions, the district court cited its previous decision in *FDIC v. American Bank Trust Shares, Inc.*, which held:

> It is well settled under South Carolina law, as well as the law of other jurisdictions, that causes of action for losses sustained because of the mismanagement and negligence of directors, officers, and employees of a bank belong to the bank itself, and not to the stockholders or creditors; and in the event of its liquidation, such causes of action are vested in its receiver; and may be conveyed and sold as any other asset.

412 F. Supp. 302, 306 (D.S.C. 1976), *vacated on other grounds*, 558 F.2d 711 (4th Cir. 1977). The Fourth Circuit affirmed this principle in *Bauer v. Sweeny*, 964 F.2d 305, 308 (4th Cir. 1992). Those cases, however, involved individual shareholders asserting clearly derivative claims against officers and directors of an operating bank entity. They did not include the additional element, present in this case, of dual-role fiduciaries at the holding company and subsidiary bank levels.

B

The Trustee correctly asserts that the fiduciary duties the Directors owed to Bancshares, as a distinct corporate entity from the Bank, were separate from those duties the Directors owed the Bank. The actual basis of liability the Trustee pled against the Directors, however, flows only from the duties the Directors may have violated in their operation and management of the Bank (with one exception discussed below). While the Directors could, conceptually, have undertaken actions uniquely and separately harmful to Bancshares (as

opposed to the Bank), the Trustee has pled primarily causes of action for liability derivative of the alleged failures at the Bank level.

The Trustee repeatedly pled that the Directors allowed mismanagement of the Bank, but such conduct caused injury first to the Bank and then only indirectly to Bancshares as the Bank's sole shareholder. For example, the Trustee pled that the Directors were responsible "for the operations and management of the Bank, and as such were directly or indirectly responsibility [sic] for the lack of management and oversight that led to the Bank's failure and resulting financial failure of Bancshares" (J.A. 8); that they failed "to cause the proper and needed controls, systems, procedures and practices be established, implemented, maintained and enforced at the Bank in order to ensure the financial success of the Bank, as the wholly-owned corporate asset of the Bank" (J.A. 9); and that they failed to implement and enforce

> prudent lending and underwriting practice and standards, and they allowed the Bank to engage in high volume of real estate and construction lending practices (including, upon information and belief, a large number of timeshare loans and "stated income" loans) of an imprudent and risky nature and in excess of reasonable and prudent lending practices in light of the volume of such lending and the nature of the market (i.e., a resort and second home environment) in which the Bank operated.

(J.A. 10.)

These alleged harms, as pled, occurred at the Bank—not Bancshares—level. While the Directors wore, so to speak, fiduciary hats at both the parent and subsidiary level, the Trustee has not pled a harm or an act that occurred at the Bancshares (parent) level that did not simultaneously and primarily occur at the Bank (subsidiary) level. The Trustee

seemed to concede as much at the hearing before the district court:

> THE COURT: So [Bancshares] couldn't have any other damages other than the bank, right?
>
> [COUNSEL]: . . . yes, if this is the only asset, the damages to the bank would be the same . . . other than the building issue that I pled separately, in general the damages are the same.

(J.A. 674–75.)

While there is limited appellate authority directly on point, the Eleventh Circuit recently considered issues somewhat similar to those in the case at bar in an unpublished decision, *Lubin v. Skow* (*In re Integrity Bancshares, Inc.*), 382 Fed. App'x 866 (11th Cir. 2010) (per curiam). In *Lubin*, as here, the trustee in bankruptcy of a bank holding company filed an adversary proceeding against the holding company's officers and directors, alleging breaches of fiduciary duty and negligence. *Id.* at 869. Specifically, the trustee in *Lubin* alleged that the defendant officers and directors had caused the holding company to take on excess debt to fund its subsidiary bank, devaluing the holding company stock. *Id.* Most of the defendants in *Lubin* served as officers and directors of both the holding company and the subsidiary bank. *Id.*

The Eleventh Circuit concluded that the FDIC succeeded to all derivative claims against the officers and directors of the subsidiary bank. *Id.* at 871. As to the liability of those fiduciaries to the holding company, the debtor entity in *Lubin*, the court observed that the bankruptcy trustee could bring claims for direct harm to the holding company, as opposed to claims derived from subsidiary level breaches of duty, and that such direct claims were not foreclosed by FIRREA in favor of the FDIC. *Id.* at 872. The bankruptcy trustee in *Lubin*, however, had failed to raise direct claims in his pleadings:

> Because the Complaint fails to plead sufficient facts connecting any act or omission by the defendants with a harm to the Holding Company that is distinct from the harm the Holding Company suffered when its investment in the Bank soured, the Complaint states no claim for which the Trustee may recover.

*Id.* at 873.

As we noted above, the main thrust of the Trustee's pleading here meets the same fate as the bankruptcy trustee's claims in *Lubin* because it focuses on harm that is not "distinct from the harm [Bancshares] suffered when its investment in the Bank soured." *Id.* In other words, the Trustee has pled mainly claims deriving from defalcations at the Bank level, not a distinct and separate harm specific to Bancshares at the holding company level. Consequently, the Trustee lacked standing to pursue the derivative claims under FIRREA as the right to pursue such claims belongs to the FDIC.

Not to be deterred, the Trustee contends that, even if we have accurately characterized most of her claims, she has pled three particular acts by the Directors that caused distinct harm to Bancshares and that are sufficiently distinct from acts at the Bank level to be direct claims not within the ambit of the FDIC through FIRREA.

First, the Trustee alleges that the Directors breached a duty owed to Bancshares by appointing unqualified directors to the Bank's board. Second, the Trustee alleges that the Directors caused Bancshares to guarantee the Bank's restoration plan while simultaneously failing to ensure that the Bank complied with OCC requirements. And third, the Trustee alleges that the Directors caused Bancshares to improperly subordinate its equity interest in a limited liability company ("LLC") that owned certain real property.[4]

---

[4]According to the Trustee's Complaint, Bancshares formed an LLC with a law firm for the purpose of constructing and owning an office

With respect to the first claim from ¶ 28(b) of the Complaint—the appointment of unqualified directors to the Bank's board—any injury primarily occurred to the Bank. Any harm to Bancshares was a secondary result of direct injury to the Bank when the Bank-level fiduciaries failed to properly operate the Bank. Thus, we disagree with the Trustee that this claim is a direct claim of Bancshares against the Directors. Rather, this claim is essentially a derivative claim that the Trustee lacks standing to raise.

Citing *Official Committee of Unsecured Creditors of BankUnited Financial Corp. v. FDIC*, No. 11-20305-CV (S.D. Fla. Sept. 28, 2011), the Trustee contends that her second claim, contained in ¶ 28(d) of the Complaint, sufficiently alleges a direct claim against the Directors for their conduct that "caused Bancshares to execute a guaranty that the Bank would comply with the OCC's requirements for a Capital Restoration Plan." (J.A. 8.) At first glance, this part of the pleading appears similar to claims that the district court in *BankUnited* concluded were direct claims not subject to the exclusive rights of the FDIC and thus could be brought by the trustee in bankruptcy. *See id.*, slip op. at 7.

In *BankUnited*, the court held that claims that a bank holding company's officers improperly "induced" that entity to pay out holding company dividends, repurchase holding company stock, and inject funds into the bank subsidiary were not derivative in nature. *Id.* In other words, those claims were not subject to the FDIC's exclusive rights flowing from acts and harm at the bank level, but were direct claims because the complaint "pled damages unique to the Holding Company."

building in Myrtle Beach, South Carolina. Bancshares owned a two-thirds membership interest in the LLC, and the law firm owned the remaining one-third membership interest. At some point, the Directors caused Bancshares to subordinate its interest in the LLC to that of the law firm, ultimately resulting in its loss of equity in the LLC.

*Id.* While we can envision circumstances where directors or officers could be liable in a direct claim for inappropriately causing the parent holding company to guarantee the debt of a subsidiary (like the Bank), the Trustee's pleading here, unlike that in *BankUnited*, fails to plead the causal connection between the act of making the guaranty to "damages unique to" Bancshares. *Id.* As pled, the alleged defalcation of the Directors is their "fail[ure] to ensure the *Bank* submitted a Capital Restoration Plan that complied with the OCC's requirements," which resulted in OCC closing the Bank. (J.A. 8.) Thus, as with the Trustee's other claims, ¶ 28(d) is a derivative claim of harm at the Bank level that the Trustee lacks standing to bring.

Finally, the Trustee alleged that the Directors caused Bancshares to improperly subordinate its equity interest in the LLC that owned real property. This particular act does indeed support a direct claim against the Directors, and the district court erred in granting the motion to dismiss as to that claim. Bancshares held a majority membership interest in an LLC that "construct[ed] and own[ed] an office building in Myrtle Beach, South Carolina." (J.A. 11.) In ¶ 28(p) of the Complaint, the Trustee pled that the Directors, "contrary to standard and prudent practices," caused Bancshares to improvidently subordinate Bancshares' majority LLC interest to that of the minority interest-holder, which caused the "loss of Bancshares' equity interest in the LLC." (J.A. 11.) For purposes of surviving the Directors' motion to dismiss, ¶ 28(p) adequately pleads direct harm to Bancshares unrelated to any defalcation at the Bank level. That is, the Directors' actions caused "damages unique to" Bancshares, *cf. BankUnited*, slip op. at 7, and the Trustee's claim is thus not a derivative claim. Therefore, the Trustee can proceed with this claim in the district court.[5]

---

[5]The Directors also raised several alternate defenses to all claims of the Trustee. As the district court granted the Directors' motion to dismiss on

## C

In her ending argument, the Trustee contends that, even if any or all of her claims are derivative, the statutory rights of the FDIC under FIRREA do not deprive her of standing against the Directors under the facts of this case. The Trustee bases this argument on the FDIC's ostensible deference to her pursuit of the claims against the Directors. In support of this argument, the Trustee points to an FDIC letter stating: "[S]taff is not convinced that any civil claim against the directors or officers [of Bancshares] would be cost-effective and will not recommend that any claim be pursued. We make no comment as to whether or not there is a meritorious claim." (J.A. 575.) The FDIC did, however, file a proof of claim in the underlying Bancshares bankruptcy proceeding. Based on the FDIC's declination to act, the Trustee contends that she thus has full authority to proceed against the Directors on all derivative claims. We disagree.

As stated above, FIRREA vested in the FDIC "all rights, titles, powers, and privileges of the [Bank], and of any stockholder . . . of [the Bank] with respect to the [Bank] and the assets of the [Bank]." 12 U.S.C. § 1821(d)(2)(A)(i). In pursuit of these rights, the FDIC may "take any action authorized by [FIRREA], which the [FDIC] determines is in the best interests of the [Bank], its depositors, or the [FDIC]." *Id.* § 1821(d)(2)(J)(ii).

---

all counts on standing grounds, it did not address any of these other defenses. Since the district court has not first had the opportunity to address these defenses on the merits, we will not undertake to do so initially on appeal. *See*, e.g.*, Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 308 (4th Cir. 2012) (reversing a district court's grant of summary judgment and remanding for further consideration of affirmative defenses raised before but not addressed by the district court). The Directors are free to assert these defenses on remand for consideration by the district court in the first instance.

FIRREA provides no direct statutory authority by which the FDIC may transfer to another party its exclusive statutory rights. The Trustee points to no case supporting such authority. And even if the FDIC had authority to transfer its statutory rights to another party, the FDIC letter at issue cannot properly be read to do any such thing.

The letter contains no waiver, disclaimer, assignment, or other purported transfer of the FDIC's rights against the Directors. It simply states that FDIC "staff is not convinced that any civil claim . . . would be cost-effective and will not recommend that any claim be pursued." (J.A. 575.) Nothing in the FDIC letter prohibits it from proceeding against the Directors if it so chooses. Moreover, our conclusion is bolstered by the language of the FDIC proof of claim, which reserves to the FDIC "any rights at law or equity that the FDIC-R has or may have against the Debtor or any other entity, person or persons, including *inter alia*, the insiders, *directors or officers of the Debtor*." (J.A. 193.)

## IV

For the above-stated reasons, we hold that the Trustee may pursue her claims only as to the Directors' alleged improper subordination of Bancshares' LLC interest. We therefore reverse and remand the district court's judgment as to that claim, but affirm its judgment in all other respects. Accordingly, we hold that the district court did not err in granting the Directors' motion to dismiss except as to ¶ 28(p), the claim for subordination of the LLC interest of Bancshares.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*