**PUBLISH**

**April 21, 2015**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

J. CANUTE BARNES; W. KING
BARNES; ROBERT V. JONES,
derivatively on behalf of all similarly
situated shareholders of Barnes
Bancorporation,

     Plaintiffs - Appellants,

v.

CURTIS H. HARRIS; NED H. GILES;
DAVID N. BARNES; ROBERT L.
THURGOOD; JERRY W. STEVENSON;
MICHAEL D. PAVICH; GARY M.
WRIGHT; DOUGLAS STANGER;
BARNES BANCORPORATION, a
nominal defendant,

     Defendants - Appellees.

------------------------------

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Barnes
Banking Corporation,

     Intervenor - Appellee.

No. 14-4002

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:12-CV-01010-TS)**

Thomas R. Karrenberg (R. Willis Orton and Justin W. Starr, Kirton, McConkie, Salt Lake City, Utah; and Jon V. Harper, Anderson & Karrenberg, Salt Lake City, Utah, with him on the briefs), Anderson & Karrenberg, Salt Lake City, Utah, for the Plaintiffs - Appellants.

Jonathan A. Dibble (Scott H. Clark, Kelly J. Applegate, and Adam K. Richards, Ray Quinney & Nebeker P.C., Salt Lake City, Utah, with him on the briefs), Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for the Defendants - Appellees.

Minodora D. Vancea (Colleen J. Boles and Kathryn R. Norcross with her on the briefs), Federal Deposit Insurance Corporation, Arlington, Virginia, for the Intervenor - Appellee.

Before **LUCERO**, **MURPHY**, and **McHUGH**, Circuit Judges.

**LUCERO**, Circuit Judge.

This appeal follows on the heels of a bank failure, the Barnes Banking Company (the "Bank") having been placed into Federal Deposit Insurance Corporation ("FDIC") receivership in 2010. Three shareholders in Barnes Bancorporation (the "Holding Company"), parent of the failed bank, brought suit against the Holding Company and its officers and directors. The district court's dismissal of their suit was on the basis that most of the claims advanced by the plaintiffs were owned solely by the FDIC under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), and

-2-

the remaining allegations were insufficient to state a claim.

We agree with the district court. Because almost all of the plaintiffs' claims assert injury to the Holding Company that is derivative of harm to the Bank, those claims belong to the FDIC. Further, the one theory of recovery advanced by plaintiffs that identifies claims not owned by the FDIC under FIRREA, which involves the alleged misappropriation of $265,000, was pled in too conclusory a fashion.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Inconsistent with its long history of conservative, community-based lending, the Bank began engaging in risky lending practices in the early 2000s.[1] As a result of mismanagement by the Bank's officers and directors, it experienced numerous economic setbacks. The Bank ultimately closed in January 2010, and the FDIC was appointed as receiver.

In January 2012, J. Canute Barnes filed a derivative shareholder complaint against the Holding Company, as a nominal defendant, and its officers and directors in Utah state court, alleging a breach of fiduciary duty. Attached to the complaint was a demand letter, a prerequisite to suit under Utah Code § 16-10a-740, which described the Holding Company as having only a single asset, namely the Bank. The initial complaint states

---

[1] Because this case was dismissed pursuant to Fed. R. Civ. P. 12(b)(6), we draw the facts from the operative, second amended complaint unless otherwise noted. See Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).

that defendants are sued in their capacities as officers and directors of the Holding Company and not as officers and directors of the Bank. However, the specific factual allegations contained in the complaint center on mismanagement of the Bank.

Holding all of the Bank's assets and property after being appointed as the Bank's receiver, the FDIC filed a motion to intervene in state court. In its motion, the FDIC argued that it possessed the exclusive statutory authority under FIRREA to assert the derivative claims at issue. The state court granted the FDIC's motion to intervene, and the FDIC removed the case to federal court.

Following removal, the district court granted a motion to amend the complaint to add two shareholder plaintiffs, W. King Barnes and Robert Jones. Plaintiffs then filed a motion to remand to state court, arguing that the FDIC was not a party to the case because it had not filed a pleading. That motion was rejected. Plaintiffs then moved to dismiss the FDIC from the litigation for failure to state a claim. When the FDIC responded with its own motion to dismiss, the defendants moved for judgment on the pleadings. The district court denied plaintiffs' motion, but granted in part the motions filed by defendants and the FDIC. It dismissed most of the plaintiffs' claims with prejudice but allowed some to be re-pled.

In their second amended complaint, plaintiffs attempt to refocus their allegations from Bank-level harm to mismanagement at the Holding Company level. They allege that the Bank was the "primary asset" of the Holding Company. However, the complaint continues to reference the previously attached demand letter, which indicates the Bank is

the "sole asset." And the gravamen of the harm alleged remains the Bank's failure.

Plaintiffs claim that the defendants should have removed and replaced the Bank's

management; that the Holding Company breached a letter agreement with the Federal

Reserve Bank to "change the Bank's practices"; and that the Holding Company

improperly issued dividends. The second amended complaint also alleges that the

Holding Company and the Bank were issued a $9 million tax refund on a joint return,

none of which was recovered by the Holding Company. It further alleges that the

Holding Company misused $265,000 by paying Directors and Officers insurance policy

premiums and retaining counsel for the defendants.

Both the FDIC and the defendants moved to dismiss the second amended

complaint. The district court granted the motions, dismissed plaintiffs' claims, and

denied further leave to amend. Plaintiffs timely appealed.

**II**

We, of course, first consider whether the district court has jurisdiction. The

existence of subject-matter jurisdiction "is a question of law which we review de novo."

Plaza Speedway Inc. v. United States, 311 F.3d 1262, 1266 (10th Cir. 2002). Subject-

matter jurisdiction may be raised at any time and cannot be waived. Huffman v. Saul

Holdings Ltd. P'ship, 194 F.3d 1072, 1076-77 (10th Cir. 1999).

During the 1980s, the United States banking system faced a crisis due to

inadequate and ineffective regulations. See United States v. Winstar Corp., 518 U.S. 839,

856 (1996). In order to protect the FDIC, which is responsible for insuring depositors'

funds against loss, and to stabilize the banking system, Congress enacted FIRREA.  See id.; see also Rundgren v. Wash. Mut. Bank, FA, 760 F.3d 1056, 1060 (9th Cir. 2014); Cavallari v. Office of the Comptroller of the Currency, 57 F.3d 137, 145 (2d Cir. 1995). As part of its effort to ensure the expeditious disposition of suits involving the FDIC, FIRREA provides that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A).

Plaintiffs contend that the FDIC is not a party, and thus the district court lacked jurisdiction, because the FDIC never filed a pleading.[2]  They refer us to a treatise for the general proposition "that jurisdiction may not be created by intervention unless the intervening party brings separate claims over which the district court has an independent basis to exercise jurisdiction."  16 Moore's Federal Practice—Civil § 107.15[7][a] (emphasis added).  That statement comes from a discussion of Village of Oakwood v. State Bank & Trust Co., 481 F.3d 364 (6th Cir. 2007).  In Village of Oakwood, the FDIC

---

[2] A majority of circuits to have considered the issue have held that non-compliance with Fed. R. Civ. P. 24(c), which requires that a motion to intervene be accompanied by a pleading, may be excused in some circumstances.  See Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 313-14 (6th Cir. 2005) (collecting cases and noting a circuit split).  In this case, however, we are not asked to decide whether any federal court erred in permitting intervention absent a pleading; the FDIC's motion to intervene was granted by the state court prior to removal.  Whether the motion to intervene was proper under state law is ultimately immaterial to the question of whether removal jurisdiction exists.  See Castleberry v. Goldome Credit Corp., 408 F.3d 773, 783 (11th Cir. 2005) ("[F]ederal law determines whether the exercise of removal jurisdiction was proper, irrespective of state law procedural violations.").

-6-

removed a case from state court before it had been granted leave to intervene. Id. at 366. The federal district court permitted FDIC intervention only after the case was in federal court. Id. The Sixth Circuit concluded that this procedure could not create jurisdiction: "In the absence of jurisdiction over the existing suit, a district court simply has no power to decide a motion to intervene; its only option is to dismiss." Id. at 367. Further, the court held that the suit did not fit within "a narrow exception" to this rule that applies when "the intervening party brings separate claims, and the district court has an independent basis to exercise jurisdiction over those claims." Id. In that scenario, "the district court [should] dismiss the original claims in the action for lack of subject matter jurisdiction while retaining jurisdiction over the intervenor's claims only." Id.

As the Sixth Circuit acknowledged in Village of Oakwood, the circuits are split on the question of whether the FDIC may create removal jurisdiction by filing a motion to intervene in federal court. Id. at 368. In Heaton v. Monogram Credit Card Bank, 297 F.3d 416 (5th Cir. 2002), the Fifth Circuit concluded that a district court possessed "subject matter jurisdiction . . . under 12 U.S.C. § 1819(b)(2)(A) as soon as the FDIC filed its motion to intervene." Id. at 421. We are not tasked with weighing in on that split. In this case, the FDIC had successfully intervened before it removed the case. Accordingly, we need not consider "the general rule that jurisdiction may not be created by intervention." 16 Moore's Federal Practice—Civil § 107.15[7][a]. Because the FDIC had already intervened at the time of removal, the question presented is simply whether intervention absent a pleading confers party status. We conclude that under circuit

precedent, it does.

In Alvarado v. J.C. Penney Co., 997 F.2d 803 (10th Cir. 1993), we considered the status of a company that had been granted leave to intervene after the claims against it were voluntarily dismissed. Id. at 804. Prior to the voluntary dismissal, the company had filed a motion to dismiss and a motion for summary judgment, but had not filed a pleading. Id. After being permitted to intervene, the company renewed its motion for summary judgment on a discrete issue even though no claims were pending against it. Id. at 804-05. The district court granted the motion and entered judgment on that issue against the plaintiff and the defendant. Id. at 804. The defendant appealed, arguing that in the absence of a claim by or against the intervenor, judgment was inappropriate. Id. at 805. We rejected this argument, holding that "when a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." Id. (quotation and alteration omitted). Although we noted that Rule 24(c) contemplates an intervenor filing a pleading setting forth its claims and defenses, we held that the company's renewed motion for summary judgment sufficed to "make [its] claims known" by "requesting a declaratory judgment of sorts." Id.

The FDIC is in the same position as the intervenor in Alvarado. It was permitted to intervene and, through its motion, insisted that it had exclusive grounds to sue under FIRREA. Under Alvarado, we are obliged to treat the FDIC "as if it were an original party." Id. (quotation omitted); see also Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior, 100 F.3d 837, 844 (10th Cir. 1996) ("If a party has the

-8-

right to intervene under Rule 24(a)(2), the intervenor becomes no less a party than others and has the right to file legitimate motions . . . .").

Treating an intervening entity as a party even if that entity has not filed a pleading is consonant with the Federal Rules. Under Fed. R. Civ. P. 12(b), "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Id. "But a party may assert [certain listed] defenses by motion" and a motion containing those defenses "must be made before pleading." Id. (emphasis added). Were we to accept plaintiffs' argument that an entity is not a party until it has filed a pleading, Rule 12(b)'s use of the term "party" would make no sense, given that the term refers to defendants who have not filed pleadings.

Further, allowing the FDIC to intervene and remove the case is consistent with Congress' purpose in enacting FIRREA: providing the FDIC a federal forum. See, e.g., Mizuna, Ltd. v. Crossland Fed. Sav. Bank, 90 F.3d 650, 657 (2d Cir. 1996) (observing that Congress "deliberately sought to channel the cases in which the FDIC would have or may wield [its] powers away from the state courts and into federal courts" (quotation omitted)); FDIC v. Meyerland Co. (In re Meyerland Co.), 960 F.2d 512, 515 (5th Cir. 1992) (en banc) ("Access to federal courts in all actions to which it is a party allows the FDIC to develop and rely on a national and uniform body of law, consistent with eliminating the problems identified by Congress in having less rigorous state standards coexisting with federal ones."); Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 731-32 (9th Cir. 1991) ("[T]he grant of  subject matter jurisdiction contained in FDIC's removal

-9-

statute evidences Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." (quotation omitted)).

Because the FDIC was a party to the state court action by virtue of its intervention, we conclude that the district court properly exercised jurisdiction over the removed action pursuant to 12 U.S.C. § 1819(b)(2)(A).

## III

Having assured ourselves that the district court possessed jurisdiction, we proceed to review its merits decision. Dismissal for failure to state a claim is reviewed de novo, accepting all well-pled facts as true and viewing them in the light most favorable to the plaintiff. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

## A

Once the FDIC is appointed as a receiver, FIRREA grants it "all rights, titles, powers, and privileges of the [bank], and of any stockholder . . . of such [bank] with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i). By passing FIRREA, "Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming." See Pareto v. FDIC, 139 F.3d 696, 700 (9th Cir. 1998). When the FDIC became the Bank's receiver, FIRREA gave the FDIC all rights that the Holding Company, a stockholder of the Bank, possessed with respect to the Bank and its assets.

Whether FIRREA applies to cases like this, in which a suit for breach of fiduciary duty is brought against a bank holding company's officers after a subsidiary bank has gone into FDIC receivership, presents a question of first impression in our circuit. However, cases from other circuits provide instructive guidance.

In Vieira v. Anderson (In re Beach First National Bancshares, Inc.), 702 F.3d 772 (4th Cir. 2012), the Fourth Circuit considered claims quite similar to those at issue in this case. The trustee of a bank holding company brought claims against its former officers and directors—who were also officers and directors of the bank held by that company—after the subsidiary bank was placed into FDIC receivership. Id. at 775. Although the court acknowledged that the defendants owed fiduciary duties to the holding company independent of those owed to the bank, it held that all but one of plaintiffs' claims belonged to the FDIC under FIRREA because the complaint alleged "causes of action for liability derivative of the alleged failures at the [b]ank level." Id. at 777. "The Trustee repeatedly pled that the [defendants] allowed mismanagement of the [b]ank, but such conduct caused injury first to the [b]ank and then only indirectly to [the holding company] as the [b]ank's sole shareholder." Id. at 778. One of the claims at issue, a holding company's interest in an LLC rather than the failed bank itself, asserted "direct harm to [the holding company] unrelated to any defalcation at the [b]ank level" and was allowed to proceed. Id. at 780.

The Seventh Circuit, in Levin v. Miller, 763 F.3d 667 (7th Cir. 2014), addressed similar claims brought by the trustee of a holding company against its officers and

-11-

directors after the FDIC took over the company's subsidiary banks. Id. at 669. FIRREA, the court explained, "allocate[s] to the FDIC not only the closed banks' rights but also any claims that investors might assert derivatively on behalf of the closed banks." Id. Applying Indiana law, which "treats a stockholder's claim as derivative if the corporation itself is the loser and the investor is worse off because the value of the firm's stock declines," id. at 670, the court concluded that most of the claims at issue belonged to the FDIC, id. at 672. In Miller, plaintiffs attempted to artfully plead that the defendants (who served as management of both the holding company and the banks) breached a duty "to [the holding company] to protect it from their own behavior at the [b]anks." Id. at 670. The Seventh Circuit concluded that this was "a veneer over a derivative claim based on the harm the [defendants'] choices caused to the [b]anks and transmitted to [the holding company] through a decline in the value of the shares it held." Id. "The FDIC, not [the holding company], therefore owns any claim against the [defendants] that depends on the choices they made as directors or employees of the [b]anks." Id. at 670-71.

In an unpublished per curiam opinion, Lubin v. Skow, 382 F. App'x 866 (11th Cir. 2010) (unpublished) (per curiam), the Eleventh Circuit also considered claims brought by the trustee of a holding company against the officers and directors of the holding company and its subsidiary, a bank in FDIC receivership. Id. at 869. That circuit concluded that "FIRREA grants the FDIC ownership over all shareholder derivative claims against the Bank's officers," and that state law controlled the question of whether a claim is derivative. Id. at 870 & n.6. Applying Georgia law, the court held that

-12-

plaintiffs' claims against the bank's officers belonged to the FDIC because "[t]he alleged harm to the [h]olding [c]ompany stems from the [b]ank officers' management of [b]ank assets" and that "harm is inseparable from the harm done to the [b]ank." Id. at 871-72. "That the [b]ank officers' poor business choices reduced the value of the [h]olding [c]ompany's investment does not alter the fact that the harm is decidedly a derivative one." Id. at 872. As to the plaintiffs' claims against defendants as officers of the holding company, the court stated without analysis that FIRREA does not apply. Id.

The facts of this case and the claims advanced by plaintiffs parallel those in Beach First, Miller, and Lubin. On our independent analysis, we are largely in agreement with the approach of those cases. If the Holding Company's claims are based on harm derivative of injuries to the Bank, then they qualify as claims of a shareholder "with respect to the [bank] and the assets of the [bank]" and belong to the FDIC. § 1821(d)(2)(A)(i). The parties agree that Utah corporate law applies. Accordingly, we look to that state's law to determine whether a claim is derivative.[3]

Under Utah law, "[d]erivative suits are those which seek to enforce any right which belongs to the corporation." Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,

_____

[3] There is no dispute that the plaintiffs, as shareholders of the Holding Company, are asserting derivative claims of the Holding Company. The parties dispute whether the claims at issue are derivative in the sense that the Holding Company, as a shareholder of the Bank, may assert derivative claims of the Bank. Such actions are sometimes referred to as "double derivative" suits. See, e.g., Brown v. Tenney, 532 N.E.2d 230, 231 (Ill. 1988) ("A double derivative suit is one wherein a shareholder of a parent or holding company seeks to enforce a right belonging to a subsidiary of the parent or holding company.").

970 P.2d 1273, 1280 (Utah 1998) (quotation omitted). Utah courts look to the nature of the injury in determining whether a claim is derivative or direct: "[I]n a direct action, the plaintiff can prevail without showing an injury to the corporation—the shareholder need show only an injury to him- or herself that is distinct from that suffered by the corporation." Id. "[T]he shareholder must examine his injury in relation to the corporation and demonstrate that the injury was visited upon him and not the corporation." Dansie v. City of Herriman, 134 P.3d 1139, 1144 (Utah 2006). If the "[p]laintiffs were injured because the [c]ompany was injured," the claim is derivative. Id.

Other than their claims regarding the $265,000 allegedly misused by the defendants, plaintiffs do not allege any harm to the Holding Company that is distinct and separate from the harm to the Bank.[4] This includes their allegation that defendants made improper dividend payments to the Holding Company's shareholders, for as the district court correctly identified, even if the plaintiffs could show that dividend payments weakened the Holding Company's finances, this weakening would not have injured plaintiffs absent the Bank's failure. Plaintiffs liken this claim to a similar one presented in Levin. See 763 F.3d at 671. However, in Levin, the plaintiff complained that improper dividend payments left a holding company itself unable to "realize[] the benefit of being better capitalized" when the "financial crunch" occurred in 2007 and 2008. Id.

_____

[4] For reasons discussed in Section III.B, we conclude that plaintiffs' allegations regarding a $9 million tax return also are for the FDIC to advance.

-14-

at 670. As characterized by the Seventh Circuit, this claim asserts harm suffered directly at the holding company level. In contrast, in the case at bar, plaintiffs' limited argument on appeal as to the dividend payments indicates that their theory of liability is derivative. Plaintiffs contend that the dividend payments left the Holding Company unable to serve as a source of financial strength for the Bank. The allegedly improper dividend payments thus did not cause any independent harm, but rather resulted in injury because of the Bank's failure. A better analogy for this claim appears in Lubin. In that case, plaintiffs alleged that a holding company suffered unique harm because its officers took on $34 million in debt. Lubin, 382 F. App'x at 872. Noting that "debt is not an intrinsic harm," the court held that this claim was derivative because "[t]he [b]ank's insolvency, which precluded the [h]olding [c]ompany from repaying the $34 million, is what forced the [h]olding [c]ompany into bankruptcy." Id. Similarly, the issuance of dividend payments did not cause any harm in and of itself. Only because the Bank failed could it have resulted in injury.

Plaintiffs allege that mismanagement by the defendants harmed the Bank and in turn the Holding Company. They have attempted to carefully plead their claims, alleging that the defendants breached their duties to the Holding Company by failing to protect the Holding Company from mismanagement—by these same defendants—at the Bank level. But plaintiffs nonetheless seek redress for injuries that first befell the Bank, and reached the Holding Company only derivatively as a result of its ownership interest in the Bank. Under Utah law, such claims are decidedly derivative in nature. See Aurora Credit

-15-

Servs., 970 P.2d at 1280.[5]  Importantly, none of these claims allege that the Holding

Company held any interest in non-Bank assets.  Cf. Beach First, 702 F.3d at 780

(determining that the FDIC did not own a claim that was unconnected to the bank in

receivership).

Plaintiffs attempt to support their argument that the bulk of their claims are direct

rather than derivative by citing to a New York case, General Rubber Co. v. Benedict, 109

N.E. 96 (N.Y. 1915), and lower court decisions following it.  In General Rubber, the

court held that a parent corporation may sue a director for failing to prevent

mismanagement of a subsidiary, and that such a claim is direct rather than derivative.  Id.

at 96-97.  However, General Rubber is contrary to Utah corporate law.  See Stone Flood

& Fire Restoration, Inc. v. Safeco Ins. Co. of Am., 268 P.3d 170, 177-78 (Utah 2011)

(holding that a shareholder may bring a direct action only for a "wrong suffered directly

and solely by the shareholder, not derivative of any loss or injury sustained by the

corporation" (quotation omitted)).  Utah law is in agreement with that of other

jurisdictions.  See, e.g., Beach First, 702 F.3d at 777 (applying South Carolina law);

Pareto, 139 F.3d at 699-700 (applying California law).

Our decision is consistent with the requirement that shareholders not circumvent

---

[5] To the extent that the Eleventh Circuit concluded that this analysis need not be undertaken with respect to claims asserted against defendants in their capacities as directors or officers of a holding company, see Lubin, 382 F. App'x at 872, such a holding is inconsistent with Utah law's focus on the nature of the injury, see Dansie, 134 P.3d at 1144.

the interests of creditors and the FDIC. As Judge Hamilton of the Seventh Circuit noted

in his concurrence in Miller:

> At the core of the financial crisis of 2008 were policies that allowed
> bankers and other financiers to privatize profits but socialize losses. There
> are of course powerful reasons for the FDIC and its counterparts . . . to play
> their vital roles in socializing losses to protect depositors and stabilize the
> economy. Any student of the Great Depression who remembers the runs on
> banks can appreciate those roles. . . . The holding company structure and
> the direct/derivative dichotomy are being used in ways that could allow
> those who ran the banks into the ground to take for themselves some of the
> modest sums available to reimburse the FDIC for a portion of the socialized
> losses they inflicted.

Miller, 763 F.3d at 674 (Hamilton, J., concurring) (quotation and citation omitted).

Ultimately, even though plaintiffs in this case may not have been to blame for the

losses incurred, they did fail to prevent the officers and directors from incurring the

losses at issue. After the Bank had run aground, these plaintiffs then brought suit to

recover their losses. However, the Bank's failure imposed losses not only on

sophisticated parties like plaintiffs, who had the ability to inspect the Bank's records, but

also on ordinary depositors, whom the FDIC is obliged to make whole. See id. at 673-74

(noting that the FDIC incurred "losses . . . to protect depositors from the folly of the

banks and their parent company").[6]

At bottom, most of plaintiffs' claims rest on injuries to the Holding Company that

_____

[6] That the FDIC may ultimately decline to pursue litigation as a remedy against the
defendants does not entitle plaintiffs to pursue litigation. See Beach First, 702 F.3d at
780-81. Allowing plaintiffs to pursue claims possessed but not asserted by the FDIC
could interfere with the FDIC's ability to bring about an orderly disposition of assets by,
for example, impairing its ability to effectively negotiate with the officers and directors.

are derivative of injuries to the Bank.  We affirm the district court's conclusion that those claims belong to the FDIC.

**B**

Plaintiffs allege that a $9 million tax refund was due based on a joint tax return filed by the Holding Company and the Bank.  The operative complaint states that "some or all" of that refund belongs to the Holding Company and that defendants had a duty to recover "that portion of the refund that was due to the Holding Company."  The district court concluded that this claim was unavailing because under the facts alleged, the right to a refund, if any, belongs to the FDIC.  That reasoning is correct.

As the district court explained, a tax refund due from a joint return generally belongs to the company responsible for the losses that form the basis of the refund.  See W. Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.), 473 F.2d 262, 265 (9th Cir. 1973).  Plaintiffs did not allege that the Holding Company possessed any business interests other than the Bank that might have generated losses.  We are directed to a demand letter which was attached to a previous filing claiming that the Bank is the Holding Company's "sole asset."  See Gee v. Pacheco, 627 F.3d 1178, 1183 (10th Cir. 2010) (in ruling on a motion to dismiss, a court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (quotation omitted)).  If the Bank is the Holding Company's sole asset and business operation, the entirety of the refund belongs to the Bank.

-18-

Plaintiffs counter that companies may agree to alter the default allocation rule by agreement.  See Bob Richards, 473 F.2d at 265.  They state that the FDIC's entitlement to the refund may depend on whether certain notice requirements have been met.  Yet plaintiffs have not alleged the existence of any agreement to allocate the refund, nor have they pled that the FDIC failed to comply with the regulations they assert are relevant.  In complaining that the district court improperly resolved the issue of ownership of the tax refund, plaintiffs forget that they bear "the burden of alleging sufficient facts on which a recognized legal claim could be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  By simply asserting that some portion of a tax refund might be due to the Holding Company without alleging any factual basis for such ownership (and in light of other information strongly suggesting the Holding Company lacks an ownership interest in the refund), plaintiffs "have not nudged their claims across the line from conceivable to plausible," and dismissal of their tax refund claim was therefore appropriate.  Twombly, 550 U.S. at 570.

## C

Plaintiffs allege that the defendants wasted $265,000 in company funds.  The FDIC asserts no claim to these funds, which were apparently Holding Company property

rather than bank assets, and thus the claim is not barred by FIRREA. This claim was dismissed for inadequacy of pleading.

On appeal, plaintiffs argue that we should adopt a more relaxed pleading standard because information regarding the $265,000 is in the defendants' sole possession. They support their argument by referencing two cases from the Second Circuit. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010); Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008). The FDIC and the defendants respond that plaintiffs are required to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which applies when fraud is alleged, and that the complaint in any event fails to meet the ordinary Iqbal/Twombly pleading standards.

We must reject plaintiffs' request. "[W]e have noted that the nature and specificity of the allegations required to state a plausible claim will vary based on context." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation and alteration omitted). But the cases holding that plaintiffs may receive a more relaxed pleading standard when relevant information is entirely outside their control are inapplicable here. Unlike Boykin and Arista Records, the facts in question were not entirely within defendants' control; plaintiffs were empowered by Utah law to obtain the relevant information before filing suit. Utah Code § 16-10a-1602 (providing that a shareholder of a corporation is entitled to inspect corporate records); cf. Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1240 (10th Cir. 2013) (noting that if plaintiff who is "well-positioned to know" the facts fails entirely to include details, such failure is

-20-

"fatal to the complaint").

We need not reach the question: Does plaintiffs' claim meet the higher Rule 9(b) pleading standard? That claim fails even under the ordinary Twombly/Iqbal criteria. Plaintiffs allege that the Holding Company used $265,000 for "potential [Company] business opportunities." They further allege that some of these funds were used to pay for Directors and Officers insurance, and to pay legal fees. But they do not explain how these common expenditures would constitute an actionable wrong. See Utah Code § 16-10a-901 to 909 (permitting corporations to indemnify officers and directors, and to purchase insurance for such individuals). Given plaintiffs' privileged position and access to the relevant facts, their allegations are far too conclusory to plausibly state a claim for relief.

**IV**

Finally, plaintiffs contend that the district court should have permitted them another opportunity to amend their complaint. The district court concluded that further amendment would have been futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1018 (10th Cir. 2013) (quotation omitted). "Although we generally review for abuse of discretion a district court's denial of leave to amend a complaint, when this denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." Cohen v. Longshore, 621 F.3d 1311, 1314 (10th Cir. 2010) (quotation omitted).

Even under the proffered third amended complaint, plaintiffs' claims for all but the $265,000 would remain under the ownership and control of the FDIC, as our prior analysis explains. Plaintiffs' proposed amendments, which would add a claim for waste against the officers and directors and seek equitable relief, do not disturb that legal conclusion.

With respect to the $265,000, plaintiffs offer additional allegations suggesting that the funds belonged to the Holding Company rather than the Bank. But the proffered third amended complaint fails to provide any additional support for their conclusory allegations that those funds were misappropriated. Because plaintiffs' complaint as amended fails to state a claim for relief, we affirm the district court's denial of the motion to amend.

## V

We are not unmoved by the frustration that plaintiffs express as they describe the collapse of the Barnes Banking Company. And our decision should not be read as evincing approbation of the conduct allegedly engaged in by its officers and directors, much less the larger pattern of misconduct exemplified by those alleged actions. The allegations demonstrate a pattern which, when repeated in many instances, inflicted severe injury on our financial system and on the many families whose livelihoods were dependent on that system. See, e.g., Dodge v. Comptroller of the Currency, 744 F.3d 148, 159 (D.C. Cir. 2014) (describing misrepresentation and concealment by bank CEO that could have injured depositors). But, we uphold the district court's order because we

recognize the broad scope of authority afforded the FDIC in dealing with the aftermath of just such a bank failure. Bank holding company shareholders, concerned about the potential collapse of a bank, must employ their powers as shareholders to stave off a bank collapse. When they fail to do so, they cannot then get underfoot and attempt to advance claims which are inconsistent and interfere with the cleanup efforts properly delegated by Congress to the FDIC.

**AFFIRMED**.