**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 3 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JOHN R. VICE,

      Plaintiff - Appellant,

v.

CONOCO, INC.,
a Delaware Corporation,

      Defendant - Appellee.

No. 96-6375

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CV-95-581-T)

James R. Moore of Horning, Johnson, Grove, Moore, Hulett & Thompson,
Oklahoma City, Oklahoma, for Plaintiff - Appellant.

Tonya E. Chatton (J. Patrick Cremin and Judith A. Colbert of Hall, Estill,
Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, with her on the brief)
of Conoco, Inc., Houston, Texas, for Defendant - Appellee.

Before **TACHA**, **BRISCOE** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

      We are asked to decide whether claims of fraudulent misrepresentation and

negligent investigation against a former employer based on an allegedly improper

discharge of an at-will employee defeats summary judgment under Oklahoma law. We conclude that, because Oklahoma has restricted the availability of wrongful termination claims by at-will employees, they do not.

Plaintiff John R. Vice, an employee of defendant Conoco, Inc., was terminated from his employment on the basis of sexual harassment allegations made against him by his secretary. Vice subsequently filed this suit alleging breach of contract, misrepresentation, negligent investigation, defamation, tortious interference with employment, and blacklisting. These claims were based on Conoco's alleged conduct in terminating him as well as actions taken after Vice was no longer with Conoco. The district court granted Conoco's motion for summary judgment. Vice appeals the decision of the district court with respect to his claims of breach of contract, misrepresentation, negligent investigation and tortious interference with employment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

John Vice began his employment with Conoco in 1969. In 1990, as Director of Right-of-Way for the Northern United States, he was transferred to Conoco's Oklahoma City office. Elizabeth Spreitzer became his secretary following this transfer.

In December 1991, Vice and Spreitzer attended a pre-wedding party for a fellow Conoco employee. Vice admits that he kissed Spreitzer that evening and told her he was interested in dating her. She rebuffed his advances. According to Spreitzer's version of the events, Vice telephoned her motel room later that night and banged on the door, allegations which Vice denies.

Both Conoco and Vice agree that Spreitzer reported this incident to Vice's supervisor. The parties disagree regarding the extent to which the events were reported. Vice alleges that Spreitzer informed his supervisor, Paul Lucas, that he had kissed her; Conoco maintains that Spreitzer only informed the supervisor that she had been harassed, but did not disclose specifically what Vice had said or done. Vice was reprimanded for violating the company's sexual harassment policy and instructed to apologize to Spreitzer and participate in an alcohol treatment program. Pursuant to a memorandum dated January 30, 1992, Vice agreed to abstain from sexually oriented conversations or actions at the risk of further disciplinary action or termination.

On March 3, 1993, Vice called Spreitzer at home to discuss work-related issues. Shortly thereafter, Spreitzer reported to Lucas that, during the telephone call, Vice had made sexually inappropriate comments. Vice admits to making the

phone call, but denies that any of his comments were sexual in nature.[1] Based on Spreitzer's allegations, Vice was disciplined pursuant to terms set forth in a Disciplinary Action letter dated March 18, 1993. Vice denied any wrongdoing, but agreed to a transfer from Oklahoma City, a pay grade reduction, a physical examination, random substance tests, counseling, and a prohibition on further contact with Spreitzer.

Shortly thereafter, Vice was notified of his termination by a letter dated April 16, 1993. In the letter, Conoco stated that his termination was based upon additional information that had surfaced concerning his past conduct. Vice alleges that the termination was improper because he was neither informed of the substance of the additional information nor allowed to respond to it, and he was punished twice for the same misconduct. He maintains that Conoco was informed in 1991 of all the facts related to the December 1991 incident. Conoco alleges that it did not learn the details of the 1991 incident until 1993 and that it terminated Vice based upon these newly discovered facts.

In January 1994, after his termination by Conoco, Vice began work as an independent contractor for DuBray Land Services and was assigned to a project

---

[1] In 1995, Spreitzer filed suit against Conoco alleging sexual harassment and hostile work environment based on the December 1991 and March 1993 incidents. The district court in that action granted summary judgment in favor of Conoco partly on the grounds that Vice had not sexually harassed her.

DuBray Land Services was performing for Conoco. In early 1994, Spreitzer discovered that Vice was working on the Conoco project and complained to her supervisor. Vice claims that Conoco then contacted DuBray Land Services and had him removed from the project.

## II

We review a grant of summary judgment de novo, applying the customary legal standard under Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).

## A

Vice's breach of contract claim is based on his assertion that in terminating him Conoco failed to properly investigate Spreitzer's accusations, did not notify him of specific charges or allow him to defend himself, and punished him twice for the same behavior. In determining whether Vice's contract claim can survive Conoco's motion for summary judgment, we apply the substantive law of Oklahoma. See Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1460 (10th Cir. 1997).

As a general proposition, Oklahoma follows the "employment-at-will" doctrine. Id. at 1461. Under Oklahoma's iteration of that familiar rule, "an employment contract of indefinite duration may be terminated without cause at

any time without incurring liability for breach of contract." Burk v. K-Mart Corp., 770 P.2d 24, 26 (Okla. 1989). "[U]nder the classic statement of the at-will rule 'an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong.'" Hayes v. Eateries, Inc., 905 P.2d 778, 781 (Okla. 1995) (quoting Burk, 770 P.2d at 26). The Oklahoma courts have carved out exceptions to the at-will principle, however, restricting the grounds on which an at-will employee may be terminated. See id. at 781-82. Thus, an implied or express contract that restricts an employer's power to terminate the employee can alter the employment relationship. See id. at 782; Black, 107 F.3d at 1461.

Vice alleges that three documents provided to him by Conoco altered his status as an "at-will" employee and entitled him to certain disciplinary procedures, thereby limiting Conoco's power to discharge him. These documents are the Supervisor's Guide to Equal Employment Opportunity ("Supervisor's Guide"), the Guidelines for Handling Performance Problem Cases and Misconduct Cases ("Guidelines"), and the March 18, 1993 Disciplinary Action letter signed by Vice and a Conoco representative. After reviewing these exhibits, we determine that as a matter of law they are not express or implied contracts. Therefore Vice's breach of contract claim must fail.

1.    Supervisor's Guide and Guidelines

Oklahoma recognizes that an implied contract can convert an at-will employment relationship to one of permanent employment or tenured job security. See Hinson v. Cameron, 742 P.2d 549, 554-55 (Okla. 1987). The Oklahoma Supreme Court in Hinson stated,

> Factors which have been isolated as critical to evaluate whether an implied contract right to job security exists are: (a) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations.

Id. Relying on Hinson and its offspring, Vice contends that the Supervisor's Guide and the Guidelines are sufficient to create an implied contract.

Normally the existence of an implied contract is a factual question. See Dupree v. United Parcel Serv., Inc., 956 F.2d 219, 222 (10th Cir. 1992) (citing Williams v. Maremont Corp., 875 F.2d 1476, 1481 (10th Cir. 1989)). "If the alleged promises are nothing more than vague assurances, however, the issue can be decided as a matter of law." Id. "Courts 'must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment.'" Hayes, 905 P.2d at 783 (quoting Hinson, 742 P.2d at 560 (Kauger, J., concurring in part and dissenting in part)).

Therefore, "unless an employee-at-will can prove substantive restrictions on the employer's power to discharge, the employment must be considered to be terminable at will." Id. (citing Blanton v. Housing Auth., 794 P.2d 412, 415 (Okla. 1990).

Reviewing both the Supervisor's Guide and the Guidelines, we agree with the district court's conclusion that these documents do not place substantive restrictions on Conoco's ability to terminate its employees and therefore cannot support Vice's breach of contract claim. Vice claims that the Supervisor's Guide establishes "specific instructions with respect to counseling and progressive discipline in situations of misconduct." Appellant's Br. at 18. Our review fails to reveal such specificity. The introduction to the Supervisor's Guide states: "This book has been designed to give you practical advice about how to handle various situations . . . . It should serve as a guide to you." Appellant's App. at 366. The Guide continues: "Supervisors sometimes need to take disciplinary action for misconduct. . . . While less serious offenses may warrant the use of progressive discipline, more serious ones may result in immediate discharge." Id. at 378. The Supervisor's Guide does not define or mandate specific termination procedures. Rather, it provides suggestions to aid supervisors in the employee discipline process.

The Guidelines expressly state that they "are intended to assist supervisors in administering disciplinary action when misconduct has occurred. . . . Less serious offences [sic] may be corrected by progressive discipline while more serious offenses may warrant discharge without progressive discipline." Id. at 390. Like the Supervisor's Guide, the Guidelines do not establish a specific procedure to which employees are entitled, rather they counsel that "[p]rogressive discipline should be used to correct all but serious misconduct on the part of employees." Id. at 391 (emphasis added).

The statements contained in both the Supervisor's Guide and the Guidelines are in the nature of "general platitudes" and "vague assurances," language that the Oklahoma Supreme Court has stated is insufficient to support the finding of an implied contract.[2] The Oklahoma courts are free to expand the exceptions to their

---

[2] This conclusion is supported by case law from both this circuit and the Oklahoma courts in which specific language was found to support the existence of an implied contract. Cf. Black, 107 F.3d at 1462 (statement in manual that "[a]ll relations and decisions pertaining to employment . . . [and] terminations . . . will be executed without regard to . . . physical . . . handicap" is not vague); Carnes v. Parker, 922 F.2d 1506, 1511 (10th Cir. 1991) (three-step grievance procedure expressly stated in personnel manual is contractually enforceable); Russell v. Board of County Comm'rs, 952 P.2d 492, 503 (Okla. 1997) (handbook's statement that employees "shall" receive overtime and holiday pay created genuine issue of material fact); Miller v. Independent Sch. Dist., 609 P.2d 756, 759 (Okla. 1980) (policy specifically required notice and explanation for nonrenewal of teaching contract); Johnson v. Nasca, 802 P.2d 1294, 1297 (Okla. Ct. App. 1990) (existence of consistently applied disciplinary procedures in conjunction with handbook defeated employer's motion for summary judgment); Breshears v. Moore, 792 P.2d 91, 92 (Okla. Ct. App. 1990) (written policy required notice of grounds of

(continued...)

employment-at-will doctrine to encompass facts such as those before us today, but to date they have not done so. We therefore reject Vice's claim that these two documents create an issue as to whether his employment relationship with Conoco was altered.

2.      March 18, 1993 Letter

Vice also alleges that the March 18, 1993 Disciplinary Action letter altered his at-will employment relationship with Conoco. That letter states that, in light of the December 1991 incident and after investigating the March 3, 1993 phone call, Conoco concluded that Vice had engaged in serious misconduct and set forth conditions to which Vice would have to submit in order to remain at Conoco. The letter continues: "Further involvement in any situation of this nature (sexual harassment), substance abuse, or any other type of misconduct, will lead to your

---

[2]   (...continued)
termination and a hearing prior to termination). In each of these cases, the language relied upon by the employee represented a specific promise, unlike the recommendations and suggestions relied upon by Vice. Because Vice does not point to specific language entitling him to particular disciplinary procedures and does not allege that Conoco treated him in a manner inconsistent with its past practices, these cases are inapposite. Although an employer's past practices may constitute a substantive restriction on the power to terminate an employee, see Hinson, 742 P.2d at 554-55, and such practices may serve to clarify an otherwise ambiguous handbook, see Johnson, 802 P.2d at 1297, our reading of the record does not reveal evidence of the customary application of disciplinary procedures by Conoco that could rise to such a level.

immediate discharge. Your compliance with all of the above stipulations will be required as conditions of continued employment." Appellant's App. at 360.

Vice argues on appeal that the letter, signed by both Vice and a Conoco representative, contractually limited Conoco's ability to discharge him. Specifically, he asserts that Conoco agreed to afford him continued employment in exchange for his compliance with the terms of the letter and promised it would not discharge him for any of the complaints made by Spreitzer.

We analyze Vice's contention that this letter constitutes a contract under the general principles of Oklahoma contract law. The existence of a contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient consideration. See Okla. Stat. Ann. tit. 15, § 2 (West 1996). The object of the contract must be ascertainable. See Okla. Stat. Ann. tit. 15, § 104 (West 1996) ("Where a contract has but a single object, and such object is . . . so vaguely expressed as to be wholly unascertainable, the entire contract is void."). Under Oklahoma law "an agreement which is not sufficiently definite to enable a court to ascertain the parties' intentions with reasonable certainty does not constitute an enforceable contract." Dunn v. Dunn, 391 P.2d 885, 887 (Okla. 1964); see also Expertise, Inc. v. Aetna Fin. Co., 810 F.2d 968, 971 (10th Cir. 1987); Firstul Mortgage Co. v. Osko, 604 P.2d 150, 153 (Okla. Ct. App. 1979) ("[I]t is necessary that the parties agree so that a court can determine what each is

expected to do in order that the court may determine the existence of a breach and formulate a remedy.") (citing Restatement (Second) of Contracts § 33 (1973)).

Vice has failed to raise a question of material fact over whether a lawful object was clearly articulated in the March 18, 1993 letter. His contention that the letter created a contractual agreement in which Conoco bound itself not to discharge him "for any of the complaints made by Spreitzer if he complied with the agreement," Appellant's Reply Br. at 7, is not supported by the language of letter. The only interpretation supported by its language is that if Vice did not comply with its terms he would be terminated. The letter does not offer any promises of continued employment. We therefore affirm the district court's determination that the letter could not constitute an enforceable contract.

**B**

Having determined that Vice was an at-will employee of Conoco, we turn to his next argument on appeal — that Conoco's conduct constituted fraudulent misrepresentation. Vice contends that Conoco represented to him through its manuals that he was entitled to substantive and procedural protections regarding his employment. According to Vice, by accepting the terms of the March 18, 1993 letter, he relied on Conoco's representation that his employment would be continued. He asserts that Conoco denied him those alleged rights when it terminated him, and argues that he properly pleaded facts sufficient to defeat

Conoco's motion for summary judgment.  See Silver v. Slusher, 770 P.2d 878, 881 n.8 (Okla. 1989) ("The elements of a common-law action for fraud are: 1) a material misrepresentation, 2) knowingly or recklessly made, 3) with intent that it be relied upon, and 4) the party relying on the false statement suffers damages.").

Although Vice's claim of fraudulent misrepresentation is not phrased in the terms of wrongful discharge, it is the functional equivalent of a wrongful discharge claim as he is claiming damages resulting from an improper termination.  Cf. Williams, 875 F.2d at 1479 (noting limitations on causes of action which can arise in employee discharge context).  Under Oklahoma law, an at-will employee does not have a cause of action for wrongful discharge unless the dismissal violates public policy.  See Gilmore v. Enogex, Inc., 878 P.2d 360, 363 (Okla. 1994) (citing Hinson, 742 P.2d at 554; Burk, 770 P.2d at 28).  In Burk, the Oklahoma Supreme Court cautioned that "the public policy exception must be tightly circumscribed," and limited such claims to circumstances "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy."  770 P.2d at 29.  Because Vice does not allege his termination was in violation of public policy, we conclude that his claim does not fall within the narrow exceptions to the at-will rule articulated by the Oklahoma courts.

## C

In addition to his breach of contract and misrepresentation claims, Vice asserts that Conoco's actions in terminating him constitute the tort of negligent investigation. Because Conoco allegedly failed to obtain the relevant facts and properly investigate the alleged harassment incidents, Vice claims that he was improperly disciplined and discharged. The courts of Oklahoma, however, have never recognized the tort of negligent investigation. See generally 82 Am. Jur. 2d Wrongful Discharge § 183 & n.3 (1992) (citing only Montana cases for the proposition that negligent investigation can create a claim in tort). We therefore decline to accept the appellant's invitation to create a new tort under Oklahoma law.

As noted above, the Oklahoma Supreme Court has taken "a narrow view with regard to circumstances under which a tort cause of action could arise in an employee discharge context." Williams, 875 F.2d at 1479; see also Burk, 770 P.2d at 29 (recognizing the public policy tort exception to employment-at-will rule while rejecting an implied obligation of good faith and fair dealing when terminating an at-will employee). Additionally, the majority of jurisdictions which have considered whether to impose liability for negligence in the context of employment terminations have declined to do so. See, e.g., Johnson v. Delchamps, 897 F.2d 808, 811 (5th Cir. 1990) ("[Under Louisiana law, employer]

was at liberty to discharge [employee] for no reason, . . . [and] was equally at liberty to discharge her for a reason based on incorrect information, even if that information was carelessly gathered."); Demars v. General Dynamics Corp., 779 F.2d 95, 100-01 (1st Cir. 1985) (Massachusetts law does not recognize a cause of action for negligent discharge); Gossage v. Little Caeser Enters., Inc., 698 F. Supp. 160, 163 (S.D. Ind. 1988) (Indiana law does not recognize tort of negligent discharge); Shaver v. F.W. Woolworth Co., 669 F. Supp. 243, 244-45 (E.D. Wis. 1986) (Wisconsin law does not recognize a cause of action for negligence in employment termination cases), aff'd 840 F.2d 1361 (7th Cir. 1988); Salazar v. Furr's, Inc., 629 F. Supp. 1403, 1410 (D. N.M. 1986) ("New Mexico has not accepted [a cause of action for negligence] in the context of an employee discharge."); Walt v. Alaska, 751 P.2d 1345, 1351 & n.9 (Alaska 1988) (noting that Alaska courts have never recognized tort action for wrongful discharge while rejecting negligent investigation claim against a public employer); Huegerich v. IBP, Inc., 547 N.W.2d 216, 220 (Iowa 1996) ("[W]e reject negligent discharge as an exception to the employment-at-will doctrine."); Ferrett v. General Motors Corp., 475 N.W.2d 243, 248 (Mich. 1991) (negligence in making termination decision not actionable in Michigan); Kittelson v. Archie Cochrane Motors, Inc., 813 P.2d 424, 426 (Mont. 1991) ("[N]egligent discharge is no longer a recognized exception to termination for employment 'at will.'"); Alford v. Life Savers, Inc.,

315 N.W.2d 260, 261 (Neb. 1982) (per curiam) (rejecting negligent termination cause of action); Lambert v. Morehouse, 843 P.2d 1116, 1119 (Wash. Ct. App. 1993) ("As a matter of policy, we conclude that tort liability for negligent investigation is . . . inappropriate in the employment relationship."); Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211, 222 (Wyo. 1994) ("We are persuaded that no tort cause of action exists for negligent investigation in employment relationships.").

There is no evidence that Oklahoma courts are on the brink of recognizing the negligence cause of action Vice asks this court to create. Such a cause of action would appear to contradict the limitations on the claims available to discharged employees established by the Oklahoma Supreme Court in Hinson and Burk, and to conflict with Oklahoma's employment-at-will doctrine. We therefore decline to recognize this new cause of action under Oklahoma tort law.

**D**

Following his discharge from Conoco, Vice began working for DuBray Land Services. His final claim on appeal is that Conoco tortiously interfered with that business relationship. Because Vice fails to set forth specific facts supporting his allegation, we affirm the district court's decision granting summary judgment for Conoco.

Under Oklahoma law, the tort of malicious interference with a contract requires the plaintiff to prove that (1) he had a business or contractual right that was interfered with; (2) the interference was malicious and wrongful, and that it was not justified, privileged or excusable; and (3) damage was proximately sustained. See James Energy Co. v. HCG Energy Corp., 847 P.2d 333, 340 (Okla. 1993). In support of his claim, Vice relies on his own deposition testimony, the depositions of several supervisors at Conoco, and a position statement filed with the EEOC by Conoco in connection with Spreitzer's sexual harassment claim.

Vice states in his deposition that Jim DuBray of DuBray Land Services told him "that Conoco contacted DuBray and asked them to take [Vice] off the project." Appellant's App. at 105. This deposition testimony is inadmissible hearsay, however, and Vice failed to provide the district court with deposition testimony or an affidavit from DuBray corroborating this statement. The depositions of the Conoco supervisors on which he does rely do not support his claim; the supervisors explicitly state they did not request that DuBray remove Vice from the project. Finally, the EEOC Position Statement indicates only that, following a discussion between the supervisors and DuBray, "it was decided that [Vice] would no longer work on the Conoco account." Id. at 400. The position statement is ambiguous as to whether the decision to remove Vice from the

project was made at the request of Conoco or whether it was a unilateral decision on the part of DuBray.

It is doubtful that Vice has presented more than a colorable showing that Conoco interfered with his contract with DuBray Land Services. Even if the scant evidence before us is sufficient to create a genuine issue of fact on the question of interference, Vice has presented no evidence that the interference was malicious and wrongful. Vice has therefore failed to "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., 912 F.2d 1238, 1241 (10th Cir. 1990). We affirm the district court's grant of summary judgment against appellant.

AFFIRMED.