UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KIMBERLY POFF,

     Plaintiff - Appellant,

v.

STATE OF OKLAHOMA, ex rel. THE
OKLAHOMA DEPARTMENT OF
MENTAL HEALTH AND SUBSTANCE
ABUSE SERVICES; OKLAHOMA
DEPARTMENT OF MENTAL HEALTH
AND SUBSTANCE ABUSE SERVICES
BOARD OF DIRECTORS; TERRI
WHITE, individually and as the
Commissioner and Chief Executive
Officer of the Oklahoma Department of
Mental Health and Substance Abuse
Services; DURAND CROSBY,
individually and as the Chief Operating
Officer of the Oklahoma Department of
Mental Health and Substance Abuse
Services; CRATUS DEWAYNE
MOORE, individually and as the General
Counsel of Oklahoma Department of
Mental Health and Substance Abuse
Services; ELLEN BUETTNER,
individually and as the Director, Human
Resources Management, Human
Resources Development for the Oklahoma
Department of Mental Health and
Substance Abuse Services,

     Defendants - Appellees.

No. 16-6146
(D.C. No. 5:14-CV-01438-C)
(W.D. Okla.)

MICHAEL DELONG,

      Plaintiff - Appellant,

v.

STATE OF OKLAHOMA, ex rel. THE
OKLAHOMA DEPARTMENT OF
MENTAL HEALTH AND SUBSTANCE
ABUSE SERVICES; BOARD OF
DIRECTORS FOR THE OKLAHOMA
DEPARTMENT OF MENTAL HEALTH
AND SUBSTANCE ABUSE SERVICES;
TERRI WHITE, individually and as the
Commissioner and Chief Executive
Officer of the Oklahoma Department of
Mental Health and Substance Abuse
Services; ELLEN BUETTNER,
individually and as the Director, Human
Resources Management, Human
Resources Development for the Oklahoma
Department of Mental Health and
Substance Abuse Services; DURAND
CROSBY, individually and as the Chief
Operating Officer of the Oklahoma
Department of Mental Health and
Substance Abuse Services; CRATUS
DEWAYNE MOORE, individually and as
the General Counsel of Oklahoma
Department of Mental Health and
Substance Abuse Services,

      Defendants - Appellees.

No. 16-6147
(D.C. No. 5:14-CV-01439-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **MURPHY**, Circuit Judges.

These consolidated appeals arise from claims made by plaintiffs Kimberly Poff and Michael DeLong under state and federal law relating to the termination of their employment from the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS" or "the Department"). As detailed below, the district court dismissed all claims against all defendants with prejudice. Plaintiffs appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I

Poff and DeLong were employed by the ODMHSAS. Poff App. at 337–38. Poff was employed as the Inspector General, and DeLong was employed as an Investigator. Id. Both were tasked with an investigation into "Narconon, a drug treatment center owned by the Church of Scientology and certified by ODMHSAS." Poff Br. at 4; Poff App. at 390–91. Poff and DeLong allege that they "uncovered serious wrongdoing at Narconon," "concluded that the facility should be de-certified and its license revoked," and "were outspoken within ODMHSAS" about their recommendations regarding Narconon. Poff Br. at 4; Poff App. at 390–91. Poff and DeLong were also outspoken about their opposition to ODMHSAS's failure to take action with regard to complaints that there was a consensual sexual relationship between General Counsel DeWayne Moore and Robin Wilson, a subordinate. Poff Br. at 4; Poff App. at 393–94. They allege they were fired for "their positions and comments" on these two issues. Poff Br. at 5;

3

DeLong Br. at 5. ODMHSAS claims that Poff was fired for breaching confidentiality and condoning DeLong's inappropriate investigative techniques, and that DeLong was fired for intentionally intimidating a witness in an investigation. Poff App. at 337–39.

Poff and DeLong filed suit against ODMHSAS, the Board, and several individual defendants. They alleged jurisdiction under 28 U.S.C. § 1331, and also under 28 U.S.C. § 1367 for their state law claims. The defendants moved to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted. The district court granted these motions as to all claims except Poff's claim of gender discrimination under Title VII, and DeLong's claim of retaliation under Title VII. Poff App. at 190; DeLong App. at 174. Poff also moved to amend her complaint to include a claim for Title VII retaliation. The district court denied this motion, concluding that amendment would be futile. Poff App. at 251. After discovery on Poff's Title VII gender discrimination claim and DeLong's Title VII retaliation claim, the district court granted the defendants' motions for summary judgment. Id. at 701; DeLong App. at 277. Poff and DeLong appeal.

## II

Poff and DeLong argue that the district court erred by dismissing (1) their Burk tort claims; (2) their negligent supervision claims; and (3) their claims under 42 U.S.C. § 1983. Poff also argues that the district court erred by denying her leave to amend her complaint to include a Title VII retaliation claim, and by granting summary judgment to defendants on her Title VII gender discrimination claim. DeLong also argues that the district court erred by granting summary judgment to defendants on his Title VII

4

retaliation claim. In addition, both argue, generally, that they should have been offered an opportunity to amend their complaints before any of their claims were dismissed with prejudice.

## A.    Claims Dismissed for Failure to State a Claim

The district court dismissed the plaintiffs' claims for a Burk tort, negligent supervision, and § 1983 for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim is reviewed de novo. Barnes v. Harris, 783 F.3d 1185, 1191 (10th Cir. 2015). We accept all well-pled facts as true and view them in the light most favorable to the plaintiff. Id. at 1191–92.

## 1.    Burk Tort Claims

Plaintiffs allege they have a cause of action in equity for termination in violation of public policy under Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24 (Okla. 1989). The district court dismissed this claim because the Oklahoma Whistleblower Act, Okla. Stat. tit. 74, § 840-2.5, provides an adequate remedy. Poff App. at 185–87; DeLong App. at 170–72. We agree.

Burk recognized "a limited public policy exception to the terminable-at-will rule as an actionable tort claim in cases in which the discharge is contrary to a clear mandate of public policy." Id. ¶ 22, 770 P.2d at 29.

> A viable Burk claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) *no statutory remedy*

5

*exists that is adequate to protect the Oklahoma policy goal*.

Vasek v. Bd. of Cty. Comm'rs, 2008 OK 35, ¶ 14, 186 P.3d 928, 932 (Okla. 2008) (emphasis added). The Oklahoma Whistleblower Act's purpose is "to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities." Shephard v. CompSource Okla., 2009 OK 25, ¶ 4, 209 P.3d 288, 290–91 (Okla. 2009). The remedies provided in the Act are sufficient to protect that statutory public policy. Id. ¶ 7, 209 P.3d at 292. Because there is a sufficient statutory remedy, a Burk tort claim is not cognizable for claims that would be covered by the Whistleblower Act. Id. ¶¶ 7, 12, 209 P.3d at 292–93.

Poff and DeLong allege that "ODMHSAS's failure to follow the mental health code's mandate for the provision of adequate care to patients undergoing drug and/or alcohol treatment, as established in Poff's report, states a cause of action under Burk sufficient to state a claim for wrongful termination in violation of public policy." Poff Br. at 28; DeLong Br. at 30. As relevant here, the Whistleblower Act provides that disciplinary action, including dismissal, shall not be taken against an employee of any department of the state government for reporting a violation of *policy* or a *substantial and specific danger to public health or safety*. Okla. Stat. tit. 74, § 840-2.5(B)(2), (E)(1) (emphasis added). Thus, plaintiffs' allegations — that they were terminated for internally reporting that ODMHSAS was not enforcing the public policy of providing adequate treatment for drug and alcohol addiction, and that this endangered public safety — fall squarely within the Whistleblower Act. No Burk claim is cognizable for these

6

allegations.[1]

## 2. Negligent Supervision Claims

Plaintiffs argue they have a cognizable tort claim against ODMHSAS for negligence because "the Department failed to hire, train and supervise its leadership employees to ensure that they knew, understood, and enforced the law with regard to hiring, reviewing, disciplining and terminating employees for misconduct." Poff Br. at 31; DeLong Br. at 32. The district court dismissed this claim for failure to state a claim upon which relief may be granted, because Oklahoma has never recognized such a cause of action. Poff App. at 188; DeLong App. at 172–73. We agree.

_____

[1] In addition, Poff apparently argues that, to the extent her allegations could have been plead as claims under the Oklahoma Anti-Discrimination Act (OADA), the district court should have *sua sponte* considered them as such. Poff Br. at 31 ("Even though she plead the claim as a public policy theory, Poff had a cause of action for violation of the OADA and the court should not have dismissed the case without prejudice[] without ruling on the OADA violation plead in the complaint."). Even with a pro se plaintiff, the court "will not . . . construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997). And Poff is not pro se.

Contrary to counsel's claim at oral argument, Poff's complaint did not plead a cause of action under the OADA. The paragraph cited by counsel appears within the section of Poff's complaint that alleges a "tort claim for wrongful discharge in violation of public policy" and states, "Oklahoma has a clearly articulated public policy which castigates sexual harassment in the workplace. See Oklahoma's Anti-Discrimination Act, 25 O.S.1991 § 1302." Poff App. at 65. This is the only mention of the OADA in Poff's complaint. Citing the existence of a state law as evidence of an existing public policy does not state a claim under that statute. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (first quoting Fed. R. Civ. P. 8(a)(2), then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Also contrary to counsel's claim at oral argument, DeLong does not even cite the OADA in his complaint.

Plaintiffs cite Oklahoma's cause of action for negligent supervision in the context of employees who commit intentional torts against others. They provide no authority for the proposition that Oklahoma might extend this cause of action to employment decisions. We have previously declined to recognize a new negligence tort under Oklahoma law in the context of employment decisions. See Vice v. Conoco, Inc., 150 F.3d 1286, 1291 (10th Cir. 1998) (declining "to create a new tort under Oklahoma law" for a claim of "negligent investigation" by an employer prior to termination). "[T]he Oklahoma Supreme Court has taken 'a narrow view with regard to circumstances under which a tort cause of action could arise in an employee discharge context.'" Id. (quoting Williams v. Maremont Corp., 875 F.2d 1476, 1479 (10th Cir. 1989)). Further, "the majority of jurisdictions which have considered whether to impose liability for negligence in the context of employment terminations have declined to do so." Id. at 1292 (collecting cases). "Such a cause of action would appear to contradict the limitations on the claims available to discharged employees established . . . [in] Burk, and to conflict with Oklahoma's employment-at-will doctrine." Id. Plaintiffs provide no authority to indicate that a negligence claim could be viable in the context of an employment action under Oklahoma law. They offer no reason why we should depart from our prior determination, that, outside the narrow exception created in Burk, Oklahoma would not recognize such a claim. "There is no evidence that Oklahoma courts are on the brink of recognizing the negligence cause of action [Plaintiffs] ask[] this court to create." See id. We again decline to do so.

8

**3.      42 U.S.C. § 1983 Claims**

Plaintiffs argue they have a claim under 42 U.S.C. § 1983 based on a violation of their rights to free speech under the First Amendment. Specifically, Plaintiffs allege First Amendment claims against individuals White, Crosby, and Moore and argue that their employment was terminated "as a direct and proximate result of [their] protected speech." Poff App. at 63; DeLong App. at 54. The district court dismissed these claims for failure to state a claim because, under the Garcetti/Pickering standard, plaintiffs had not alleged that they engaged in protected speech.[2] Poff App. at 194; DeLong App. at 178. We

---

[2] In the district court, the plaintiffs argued that, because their claims were against co-employees, not their employer, the Worrell standard, not the Garcetti/Pickering standard should apply. Poff App. at 193; DeLong App. at 179. Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), articulates the standard that applies to First Amendment free speech claims when the defendant is not the plaintiff's employer and when the plaintiff and defendant have "no direct contractual relationship." Id. at 1209. Under Worrell, a plaintiff must show "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" Id. at 1212 (quoting Lackey v. County of Bernalillo, 166 F.3d 1221 (10th Cir. 1999) (unpublished)).

On appeal, plaintiffs appear to have changed course and now agree that Garcetti/Pickering applies. See Poff Br. at 49 ("Poff has met her burden under Garcetti/Pickering."); DeLong Br. at 48. Because of this previous dispute, however, the district court also concluded that, if applicable, the Worrell standard was similarly unavailing because it required a plaintiff to show that his or her speech was not made within the scope of employment. The Worrell standard does not contain any such requirement. To support this erroneous conclusion, the district court cited only Leverington v. City of Colorado Springs, 643 F.3d 719, 733 (10th Cir. 2011), which held that it was not clearly established whether the public-concern test would apply to a free-speech retaliation claim under Worrell. Leverington did not address whether an individual loses all First Amendment protection when speech is made within the scope of employment. We see no reason why the First Amendment would be so limited.

9

agree.

The five-step Garcetti/Pickering analysis applies when a public employer restricts the speech of a public employee. See Garcetti, 547 U.S. 410, 418–19 (2006) ("The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens."); Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007). "First, the court must determine whether the employee speaks 'pursuant to [his] official duties.'" Brammer-Hoelter, 492 F.3d at 1202 (quoting Garcetti, 547 U.S. at 421). "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" Id. (quoting Garcetti, 547 U.S. at 422). This is a question of law to be resolved by the court. Id. at 1203.

This court "ha[s] taken a broad view of the meaning of speech that is pursuant to an employee's official duties." Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 746 (10th Cir. 2010) (quoting Thomas v. City of Blanchard, 548 F.3d 1317, 1324 (10th Cir. 2008)). "[T]he Tenth Circuit has taken a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." Id. "In general, the court has focused on whether the speech activity 'stemmed from and [was of] the type . . . that [the employee] was paid to do,' and has highlighted that the ultimate question in

10

determining whether speech falls within an employee's official duties is 'whether the employee speaks as a citizen or instead as a government employee.'" Id. (first quoting Green v. Bd. of Cty. Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007), then quoting Brammer-Hoelter, 492 F.3d at 1203). Examples of protected government employee speech include "activity afforded citizens" such as communicating with newspapers or legislators, or discussing politics with a coworker. Id. (quoting Green, 472 F.3d at 800). In contrast, "a government employee's speech is not protected when there is 'no relevant analogue to speech by citizens who are not government employees.'" Id. (quoting Garcetti, 547 U.S. at 424). "[S]peech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties under Garcetti/Pickering." Id. at 746–47. "[S]peech directed at an individual or entity within a[n] employee's chain of command is often found to be pursuant to that employee's official duties . . . . But an employee's decision to go outside of their ordinary chain of command does not necessarily insulate their speech." Id. at 747.

We need not go any further than this first step of the Garcetti/Pickering analysis because Plaintiffs admit that their speech was within the scope of their employment with ODMHSAS. See, e.g., Poff Br. at 17 ("[Poff] was fired for doing exactly what she was hired to do."); id. at 16 ("Poff was engaging in conduct required by her job in bringing hostile working environment claims."); DeLong Br. at 15 (same); Poff Br. at 28 ("Poff's investigation and subsequent recommendation that the facility be shuttered was an essential element of her job as Inspector General."); DeLong Br. at 30 (same); Poff Br. at

11

43 ("[Poff and DeLong] did their job and disclosed that a protected member of Leadership was engaged in a sexual relationship with his subordinate employee."); id. at 17 ("Poff's job is to investigate allegations of consumer abuse, neglect and mistreatment as well as any allegation of employee misconduct including civil rights violations of gender discrimination, sexual harassment, racial discrimination, age discrimination, disability, medical or pregnancy discrimination, retaliation and all claims under Title VII."); DeLong Br. at 15 (same). Poff's allegation that "she even went outside the chain of command to report" her concerns does not remove her speech from within the scope of her employment. See Poff Br. at 48. She alleges only that she "repeated her concerns" within ODMHSAS. For private citizens, there is "no relevant analogue to" this type of internal reporting. See Garcetti, 547 U.S. at 424. Plaintiffs' speech is not protected because it was made within the scope of their public employment.

Plaintiffs also seem to argue, for the first time on appeal, that they have § 1983 claims based on their alleged Title VII claims. See Poff Br. at 49; DeLong Br. at 48. This argument is without merit. "[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983, lest Congress' prescribed remedies under Title VII be undermined." Starrett v. Wadley, 876 F.2d 808, 813 (10th Cir. 1989).

**B.    Title VII Claims**

The district court granted summary judgment to defendants on Poff's gender discrimination claim and DeLong's retaliation claim. It also denied Poff's motion to

12

amend her complaint to include a retaliation claim as futile. We review a grant of summary judgment de novo. Jones v. Norton, 809 F.3d 564, 573 (10th Cir. 2015). We "view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." Id. Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a)). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hill, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir.2000)). We review a denial of leave to amend a complaint for abuse of discretion. Jones, 809 F.3d at 579. "Where the reason for denial of leave to amend is futility, we review de novo the legal basis for the finding of futility." Id.

### 1.    Poff's Gender Discrimination Claim

Poff argues that the district court erred in granting ODMHSAS's motion for summary judgment on her gender discrimination claim under Title VII. Poff Br. at 50. The district court granted summary judgment on this claim because Poff "failed to demonstrate Defendants' reasons for terminating her were pretextual." Poff App. at 700. Specifically, the district court held that Poff had not shown that Defendants' knew

13

Milnes's report was false, or that similarly situated employees were treated differently.[3]

Id. at 699–700.  We agree that Poff cannot establish that the Department's reason for firing her was a pretext.[4]

Title VII prohibits discrimination in employment on the basis of gender.  42 U.S.C. § 2000e-2(a); Bird v. W. Valley City, 832 F.3d 1188, 1200 (10th Cir. 2016). When a plaintiff provides no direct evidence of discrimination, we apply the three-part burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973).  Bird, 832 F.3d at 1200.  Under this framework, a plaintiff must first establish a prima facie case of discrimination.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000).  In order to do so, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was otherwise qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination.  Id.; Rivera v. City & Cty. of

---

[3]  Although Poff argued in the district court that others similarly situated were treated better than she was, she has apparently abandoned this argument on appeal, because it is not addressed in her briefing.  To the extent counsel attempted to revive this argument at oral argument, we need not consider it.  "It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'"  United States v. Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998)).

[4]  The district court also applied the "same actor inference."  "[I]n cases where 'the employee was hired and fired by the same person within a relatively short time span,' there is 'a strong inference that the employer's stated reason for acting against the employee is not pretextual.'"  Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006) (quoting Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)).  To the extent Poff argues she was not hired and fired by the same person, this argument is directly contradicted by her own deposition testimony.  See Poff App. at 299.

14

Denver, 365 F.3d 912, 920 (10th Cir. 2004).  If the plaintiff establishes a prima facie case of discrimination, the defendant must then "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  Rivera, 365 F.3d at 920 (quoting McDonnell Douglas, 411 U.S. at 802); Reeves, 530 U.S. at 142.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves, 530 U.S. at 142 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  Finally, "[s]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Rivera, 365 F.3d at 920 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

"Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  "[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"  Id. (quoting Burdine, 450 U.S. at 256).  "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'"  Johnson v. Weld Cty., 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1197 (10th Cir. 2008)).

15

Here, Defendants concede Poff has established a prima facie case of discrimination. Poff App. at 697. Poff concedes that "the Department has asserted a justifiable reason for firing her." Poff Br. at 57. Thus, Poff must demonstrate that the Department's proffered reason was a pretext for discrimination. She cannot do so. The only argument she offers with respect to this issue is as follows:

> A rational person could conclude that Milnes' investigation as well as his findings were not worthy of belief given the idiosyncratic nature of his findings that were premised, time and again, on suspicions and conjecture. DeLong makes clear that Milnes had a reputation for being a manipulator and that he was hired by the Department for that reason. Moreover, following his interview with Poff, Milnes told her that he did not see a policy violation even though one of the alleged violations he was charged with investigating included dissemination of confidential information — a policy violation.

Id. at 58–59. As the district court noted, "[t]he issue surrounding Mr. Milnes' investigation is not whether the facts contained therein are true but whether Defendants believed those facts to be true when they decided to terminate Plaintiff." Poff App. at 699; Sorbo v. UPS, 432 F.3d 1169, 1178 (10th Cir. 2005) ("We have repeatedly held that the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise."). Poff was hired and fired by White. Poff App. at 337–38. White states by affidavit that in July 2013, she was informed by Crosby that Poff may have breached confidentiality. Id. at 337. White asked Crosby to investigate. Id. On July 26, 2013, Crosby reported to White that he had hired Milnes to investigate Poff. Id. at 338. On August 6, 2014, Crosby reported to White that,

16

based on Milnes's investigation, Crosby had concluded that Poff had violated ODMHSAS policy by failing to maintain confidentiality regarding an ongoing investigation and by condoning DeLong's intimidation of a witness during an investigation. Id. Crosby also reported that Milnes had found Poff to be dishonest during Milnes's interview of her. Id.

Poff presents an affidavit from Rick McCoy stating that Milnes told McCoy he did not find any policy violations and that the investigation and termination of Poff was based on "typical office politics." Id. at 564. McCoy further stated that there was no evidence Poff was terminated for cause. Id.

Even if the underlying factual basis for terminating Poff was fabricated by Milnes, Poff's claim fails because she presented no evidence from which a reasonable juror could infer that White knew Milnes was not truthful in his report to Crosby, or even any evidence (beyond DeLong's mere speculation) that Crosby knew Milnes was not truthful. Thus, Poff has failed to carry her burden of establishing that the Department's proffered nondiscriminatory reason for terminating her employment was "so incoherent, weak, inconsistent, or contradictory" that it was "unworthy of belief." See Hinds, 523 F.3d at 1197. Summary judgment on this claim was appropriate.

## 2. DeLong's Retaliation Claim

DeLong argues that the district court erred in granting Defendants' motion for summary judgment on his Title VII retaliation claim. DeLong Br. at 49. The district court granted Defendants' motion for three reasons: (1) DeLong's job included

17

investigating claims of sexual harassment so his opposition was not protected; (2) reporting an office romance is not protected by Title VII; and (3) DeLong could not establish that the Department's nondiscriminatory reason for firing him was a pretext. DeLong App. at 274–75. Although we conclude that this first basis is unsupported,[5] we agree with the second and third.

Title VII prohibits retaliatory discrimination. See 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, [a plaintiff] 'must show that: (1) [he or] she engaged in protected activity; (2) [he or] she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.'" Vaughn v. Villa, 537 F.3d 1147, 1150–51 (10th Cir. 2008) (quoting Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1123–24 (10th Cir. 2007)). "Protected activities fall into two distinct categories: participation or opposition." Id. (quoting Laughlin v. Metro. Wash.

---

[5] We can find no support, in either the text of Title VII or related case law, for a requirement that the plaintiff's opposition fall outside the scope of his or her employment in order to be protected by Title VII. See also Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 276 (2009) ("The term 'oppose,' being left undefined by the statute, carries its ordinary meaning.").

The district court relied upon a principle from this court's case law regarding the Fair Labor Standards Act (FLSA). Although it is true that this court has previously applied reasoning from FLSA cases to Title VII cases, it has done so where the statutory language at issue was analogous. See Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1165 (10th Cir. 1977) (citing an FLSA case regarding the meaning of "employee" for its persuasive value in a Title VII retaliation case, where both statutes prohibit discrimination against an "employee"). Here, it is not. The FLSA case cited by the district court dealt with a provision of the FLSA that prohibits retaliation against an employee who participates in proceedings under the FLSA. McKenzie v. Renberg's Inc., 94 F.3d 1478, 1485 (10th Cir. 1996) (citing 29 U.S.C. § 215). This provision is analogous to Title VII's participation clause, but not to its opposition clause. Thus, the FLSA case cited is not relevant to an opposition clause claim.

18

Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)).  Under the opposition clause, an

employer may not retaliate against an employee "because [the employee] has opposed

any practice made an unlawful employment practice by this subchapter."  42 U.S.C.

§ 2000e-3(a); Vaughn, 537 F.3d at 1151.  Under the participation clause, an employer

may not retaliate against an employee who "has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this

subchapter."  42 U.S.C. § 2000e-3(a); Vaughn, 537 F.3d at 1151.

DeLong raised a claim under only the opposition clause.  DeLong App. at 274.

Specifically, he argues that he was terminated for his opposition to the relationship

between Moore and Wilson.  DeLong Br. at 49.  This allegation does not establish a claim

under Title VII, because discrimination based on a consensual sexual relationship is not

prohibited by Title VII, and thus, opposition to such a relationship is not protected.  See

Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1369–70 (10th Cir. 1997) (collecting

cases).  "Favoritism, unfair treatment and unwise business decisions do not violate Title

VII unless based on a prohibited classification" and we have explicitly "decline[d] to

extend Title VII to include consensual romantic involvements."  Id. at 1370.

DeLong's claims that his opposition to the Moore/Wilson relationship "goes

beyond chagrin over real or perceived favoritism" and, instead, "the major concern . . .

was the potential for a third-party sexual harassment claim."  DeLong Br. at 52–53.  But

he offers no factual basis for this "major concern."  Speculation regarding the potential

for a sexual-harassment claim, without a factual predicate for such concern, does not

19

elevate the existence of a consensual relationship in the workplace to an allegation of sexual harassment that would be prohibited under Title VII.

Further, even if DeLong's conduct were protected, summary judgment would be appropriate because, as in Poff's case discussed above, there is no evidence that White had any reason to doubt the validity of Crosby's reports of wrongdoing. Thus, DeLong cannot establish that Defendants' proffered reason for his termination was a pretext for retaliation.

## 3.    Poff's Retaliation Claim

Poff alleges the district court erred in denying her motion to amend her complaint to include a claim for Title VII retaliation that she inadvertently omitted from her second amended complaint. Poff Br. at 36–37. The district court denied leave to amend because amendment would have been futile. Poff App. at 249. We agree.

Generally, a party may amend its pleading once as a matter of course, but subsequent amendments require either the opposing party's written consent or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, if the amendment would be futile, we will uphold the denial of a requested amendment." Jones, 809 F.3d at 579.

Specifically, the district court held that Poff could not state a claim for Title VII retaliation because, first, under the participation clause, Poff had not filed a formal charge with the  EEOC, Poff App. at 249–50, and, second, under the opposition clause, Poff had not engaged in protected activity because reporting misconduct was within the scope of

20

her job, id. at 250–51.  First, the participation clause applies only when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  See 42 U.S.C. § 2000e-3(a).  Although we have not previously addressed the limits of this clause, we need not do so here.  Poff alleges that she was terminated on or about August 23, 2013, but that she did not contact the EEOC until January, 2014.  Aplt. App. at 219.  She makes no allegation that her termination in August had anything to do with a pending EEOC complaint or investigation.  Thus, the district court did not err in concluding that Poff could not establish a retaliation claim based on the participation clause.  See Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d Cir. 2015) ("[T]he participation clause only encompasses participation in formal EEOC proceedings; it 'does not include participation in an internal employer investigation unrelated to a formal EEOC charge.'" (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 48 (2d Cir. 2012))).

Second, for the reasons discussed above with respect to DeLong's retaliation claim, although Poff need not allege that her opposition was outside the scope of her employment, she must allege that her opposition was to activity "made an unlawful employment practice by [Title VII]."  She has not done so.  Poff alleges that she spoke out against the Department's refusal to take action on complaints regarding a consensual sexual relationship between Wilson and Moore.  Although Poff uses the words "sexual harassment" and "sexually hostile work environment," Poff Br. at 38, she alleges no facts that would raise an inference that her opposition was related to anything more than the

21

bare existence of a consensual sexual relationship, which is not prohibited conduct under Title VII.

Further, even if Poff could proceed on this claim, she would be required to show that the Department's proffered nondiscriminatory reason for terminating her employment was a pretext. As discussed above with respect to her gender discrimination claim, she cannot do so.

## C.    Dismissal with Prejudice

Poff and DeLong argue, generally, that the district court erred by dismissing their claims with prejudice rather than without, and that the court should have permitted them to amend their complaints prior to dismissal. Id. at 20. With the exception of Poff's Title VII retaliation claim, discussed above, Poff and DeLong did not ask the district court for leave to amend, nor do they explain what amendments they would like to make. They cannot expect the court to *sua sponte* offer such an opportunity when their factual allegations fail to state a claim under any of the causes of action they raise and there has been no proffer of additional facts that could potentially support the claims made.

## III

For the foregoing reasons, the judgment of the district court is affirmed.


Entered for the Court


Mary Beck Briscoe
Circuit Judge


22